IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SAMUEL JAMES FOX, III,                    )
                                          )
                Plaintiff,                )
                                          )
        v.                                )    C.A. No. 07-488-GMS
                                          )
TOWN OF SMYRNA, DAVID S.                  )
HUGG, III, individually and              )
in his official capacity as              )
Town Manager of the Town of              )
Smyrna and VALERIE HERITAGE,             )
individually and in her                   )
official capacity as                      )
Administrative Clerk of the               )
Town of Smyrna,                           )
                                          )
                Defendants.               )

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**AKIN & HERRON, P.A.**
Bruce C. Herron
Attorney I.D. No.: 2315
1500 Shallcross Avenue
Suite 1-A
Wilmington, DE 19806
(302) 427-6987
Attorney for Defendants

Dated: May 30, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . .  i

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . .  1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . .  3

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

    I.    SUMMARY JUDGMENT STANDARD OF
        REVIEW  . . . . . . . . . . . . . . . . . . . . . . .  11

    II.   PLAINTIFF'S AGE AND SEX DISCRIMINATION CLAIMS MUST
        FAIL BECAUSE HE DID NOT SUFFER FROM AN ADVERSE
        EMPLOYMENT DECISION . . . . . . . . . . . . . . . . .  13

    III. PLAINTIFF'S CLAIMS PURSUANT TO 42 U.S.C. §2000(e)
        and 29 U.S.C. § 626 MUST BE DISMISSED BECAUSE
        THERE IS NO EVIDENCE OF DISCRIMINATION AGAINST
        PLAINTIFF BASED ON SEX OR AGE . . . . . . . . . . .  15

    IV.  DEFENDANT HERITAGE IS ENTITLED TO JUDGMENT AS
        MATTER OF LAW BECAUSE HER STATEMENTS REGARDING
        PLAINTIFF WERE NOT DEFAMATORY . . . . . . . . . . .  18

    V.   PLAINTIFF'S DEFAMATION CLAIM AGAINST DEFENDANT
        HERITAGE MUST BE DISMISSED BECAUSE HE HAS NOT
        ALLEGED SPECIAL DAMAGES . . . . . . . . . . . . . .  20

    VI.  DEFENDANTS HAVE NOT BREACHED THE COVENANT OF GOOD
        FAITH AND FAIR DEALING IMPLIED UNDER DELAWARE LAW .  21

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . .   12

Celotex Corp v. Catrett
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . .   12

Doe v. Cahill
    888 A.2d 451 (Del. Supr. 2005) . . . . . . . . . .   18

Faragher v. City of Boca Raton
    524 U.S. 775 (1998) . . . . . . . . . . . . . . . .   13

Gannett Co., Inc. v. Re
    496 A. 2d 553 (Del. Supr. 1985) . . . . . . . . . .   19

Gertz v. Robert Welch, Inc.
    418 U.S. 323 (1974) . . . . . . . . . . . . . . . .   18

Gray v. York Newspapers, Inc
    957 F.2d 1070 (3d Cir. 1992) . . . . . . . . . . .   14

Kassner v. 2nd Avenue Delicatessen, Inc.
    496 F.3d 229 (2nd Cir. 2007) . . . . . . . . . . .   14

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . .   11

Merrill v. Crothall-American, Inc.
606 A. 2d 96 (Del. Supr. 1992) . . . . . . . . . . . .   21

Mondzelewski v. Pathmark Stores, Inc.
    162 F.3d 778 (3d Cir. 1998) . . . . . . . . . . . .   13

Pa. Coal Ass'n v. Babbitt
    63 F. 3d 231 (3d Cir. 1995) . . . . . . . . . . . .   11

Potence v. Hazelton Area Sch. Dist.
    357 F.3d 366 (3d Cir. 2004) . . . . . . . . . . . .   13

Riley v. Moyed
    529 A.2d 248 (Del. Supr. 1987) . . . . . . . . . 18, 19

<u>Sarullo v. United States Postal Service</u>
    352 F.3d 789 (3d Cir 2003) . . . . . . . . . . . . . . 13

<u>Spence v. Funk</u>
    396 A.2d 967 (Del. Supr. 1978) . . . . . . . . . . . 20

<u>Turner v. Schering-Plow Corp.</u>
    901 F.2d 335 (3d Cir. 1990) . . . . . . . . . . . . . 13

<u>Witcher v. Sodexho, Inc.</u>
    478 F.Supp. 2d 633 (D. Del. 2007) . . . . . . . . . 13, 16

**OTHER AUTHORITIES**

Prosser, <u>Law of Torts</u>
    (1971) § 111 p. 739 . . . . . . . . . . . . . . . . 20

**<u>STATUTES</u>**

Fed R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . 11

42 U.S.C. §2000(e) . . . . . . . . . . . . . . . . . . 1

29 U.S.C. §§ 623 . . . . . . . . . . . . . . . . . . . 15

29 U.S.C. §626 . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §2000(e) . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 2000-e 2(a)(1) . . . . . . . . . . . . . . 15

## NATURE AND STAGE OF THE PROCEEDINGS

On August 7, 2007 Plaintiff Samuel J. Fox, III filed a Complaint (D.I. 1) in this Court naming as defendants the Town of Smyrna ("Town"), Town Manager David S. Hugg, III and Town Administrative Clerk Valerie Heritage.  The Complaint asserts that defendants discriminated against plaintiff, a Town employee from July, 2000 to January, 2006, on the basis of sex and age in violation of 42 U.S.C. §2000(e) and 29 U.S.C. §626.  The Complaint also includes State law claims for defamation and breach of an implied covenant of good faith and fair dealing. Defendants filed an Answer & Affirmative Defenses on August 30, 2007.  (D.I. 7).

Pursuant to the Court's Scheduling Order (D.I. 12) discovery is complete.  Defendants have moved for summary judgment as to all claims.  This is Defendants' Opening Brief in Support of their Motion for Summary Judgment.

1

<u>SUMMARY OF ARGUMENT</u>

I.    SUMMARY JUDGMENT STANDARD OF REVIEW.

II.   PLAINTIFF'S AGE AND SEX DISCRIMINATION CLAIMS MUST
      FAIL BECAUSE HE DID NOT SUFFER FROM AN ADVERSE
      EMPLOYMENT DECISION.

III.  PLAINTIFF'S CLAIMS PURSUANT TO 42 U.S.C. §2000(e) and
      29 U.S.C. § 626 MUST BE DISMISSED BECAUSE THERE IS NO
      EVIDENCE OF DISCRIMINATION AGAINST PLAINTIFF BASED ON
      SEX OR AGE.

IV.   DEFENDANT HERITAGE IS ENTITLED TO JUDGMENT AS
      MATTER OF LAW BECAUSE HER STATEMENTS REGARDING
      PLAINTIFF WERE NOT DEFAMATORY.

V.    PLAINTIFF'S DEFAMATION CLAIM AGAINST DEFENDANT
      HERITAGE MUST BE DISMISSED BECAUSE HE HAS NOT
      ALLEGED SPECIAL DAMAGES.

VI.   DEFENDANTS HAVE NOT BREACHED THE COVENANT OF GOOD
      FAITH AND FAIR DEALING IMPLIED UNDER DELAWARE LAW.

## STATEMENT OF FACTS

Plaintiff Samuel James (Jim) Fox, III, then age 48, began his employment with the Town of Smyrna in July, 2000 as a Building Code Enforcement Officer. (Complaint - A-2).[1] Fox, a high school graduate with one semester of college, was employed as a waterman and construction worker prior to his employment with the Town. (Deposition of Samuel J. Fox, III, A-15-17). He was promoted to the position of Building Inspector in 2002. (Fox Dep. A-18-19). Fox became Capital Projects Coordinator for the Town in 2004. (Fox Dep. A-20-21).

In early 2005 the Town's Director of Planning and Inspections resigned. Defendant Town Manager David Hugg decided to divide the Planning and Inspections Department into two separate sections - Zoning and Planning and Building and Inspections. (Fox Dep. A-22). Hugg promoted Fox to Manager of Building and Inspections (Fox Dep. A-22) and named Town Employee Janet Vinc, a University of Delaware graduate enrolled in a Master's Degree program in Urban Affairs and Public Policy, as the Manager of Planning and Zoning. (Affidavit of Janet Vinc, A-101; Fox Dep. A-22).

---

[1] References to the Appendix to Defendants' Opening Brief in Support of Their Motion for Summary Judgment will be to "A- ."

The two new positions were at equivalent levels at the
Town's organizational structure.  (Fox Dep. A-24-25).  Both Mr.
Fox and Ms. Vinc reported directly to Mr. Hugg.  (Fox Dep. A-25).
As a result of his promotion, Fox's yearly salary increased to
$52,000.00.  (Fox Dep. A-38).  Ms. Vinc's salary was
approximately $37,500.00.  (Vinc Aff. A-101).

On March 10, 2005 Fox stopped in the office of Town employee
Gary Stulir at the end of the work day.  (March 22, 2005
Affidavit of Gary Stulir, A-85).  Town employee James Markow was
also present.  During a discussion between the three men, Fox
expressed concerns about Janet Vinc's work performance and stated
"that he knew how she got her job and that really bothered him."
(Stulir Aff., A-85; Fox Dep. A-26).  According to Markow, Fox
explicitly stated "the way she got the job was laying on her
back."  (March 22, 2005 Affidavit of James Markow, A-84;
Deposition of James Markow, A-41).  Fox claims he meant that Vinc
"got her job because she was Mr. Hugg's student at the University
of Delaware and he brought her there."  (Fox Dep. A-26).  Stulir
believed the clear implication of Fox's undisputed remark was
that Ms. Vinc had obtained her position as a result of
inappropriate sexual activity.  (Deposition of Gary Stulir, A-45-
46).

4

Stulir and Markow told Hugg they were very upset about Fox's derogatory comments regarding Ms. Vinc (Deposition of David S. Hugg, III, A-48-49). During a meeting on March 11, 2005, Hugg expressed his concern regarding Fox's comments. At the end of the meeting Hugg stated that he considered the matter resolved and that he did not intend to discipline Fox. (Fox Dep. A-27-28) (Notes from March 11, 2005 Meeting, A-73)(Hugg Dep. A-53).

Ms. Vinc subsequently learned about Fox's comments and discussed her concerns with Mr. Hugg. As a result of Ms. Vinc's informal complaint, affidavits were obtained from Stulir and Markow (A-84-85). (Hugg Dep. A-50-51). Hugg placed the two affidavits in his desk and left them there. (Hugg Dep. A-52).

During March, 2005 Fox told a Town Councilman that he aspired to the vacant position of "Assistant Town Manager and to one day be the Town Manager of Smyrna." (Fox Dep. A-29). Fox claims that Janet Vinc told Hugg that she would not work for Fox if he was promoted to Assistant Town Manager. (Fox Dep. A-29). Hugg believed (and still believes) that the Town did not need an Assistant Town Manager. (Hugg Dep. A-54-56). The position was never filled and remains vacant. (Fox Dep. A-30; Hugg Dep. A-54-56).

On May 24, 2005, plaintiff's wife Cathy Fox called Town Hall and spoke to defendant Town Accounting Clerk Valerie Heritage. (Deposition of Catherine A. Fox, A-58). Mrs. Fox and Ms.

5

Heritage were prior acquaintances.  (C. Fox Dep. A-58).  Mrs. Fox
asked about Aimee Masten, her husband's new secretary.  (June 15,
2005 E-mail from Cathy Fox to Alexis R. Fox, A-87) (C. Fox Dep.
A-59).  Mrs. Fox told Ms. Heritage "there were times when Aimee
was calling the house" and "[i]t had made [her] uncomfortable."
(C. Fox Dep. A-59).  Ms. Heritage told her that "Aimee seemed to
be in Jim's office alot, that the door was closed quite often."
(C. Fox Dep. A-59).

    Mrs. Fox called Ms. Heritage again later that day.  She
again asked Ms. Heritage about Ms. Masten and Mr. Fox.
(Deposition of Valerie Heritage, A-69).  Ms. Heritage said she
had seen "inappropriate looks" between them.  (Heritage Dep. A-
107).  However, Ms. Heritage said there was no proof of anything
going on between Mr. Fox and Ms. Masten.  (Heritage Dep. A-71).

    Mrs. Fox made a third call to Ms. Heritage on May 24, 2005.
(C. Fox Dep. 60-61).  Mrs. Fox said that in her previous marriage
her husband had an affair and phone calls had been made to her
residence by various females.  (C. Fox Dep. A-62).  Ms. Masten's
calls had "brought out all those prior skeletons."  (C. Fox Dep.
A-61-62).  Ms. Heritage stated that Mr. Fox and Aimee "would
google each other across the table at meetings."  (C. Fox Dep. A-
62).  Mrs. Fox stated that she had followed her previous husband
and caught him with a female.  Ms. Heritage advised that "she,
too, had a failed first marriage, that her husband had an affair

6

as well." (C. Fox Dep. A-62). Ms. Heritage asked if she could do anything to help Mrs. Fox. (C. Fox Dep. A-63).

Mrs. Fox called Ms. Heritage a <u>fourth</u> time at her home the following morning. (C. Fox Dep. A-64). Ms. Heritage again told her "there was no proof of anything going on" and that if she "wanted to find out if there was really something going on she should follow them." (C. Fox Dep. A-63).

Mrs. Fox expressed her belief that her husband was not having an affair. (C. Fox Dep. A-64) (June 15, 2005 E-Mail Memo, A-87). Ms. Heritage replied: "You are probably right. You can't assume anything if there isn't any evidence." (June 15, 2005 E-Mail, A-87; C. Fox Dep. 66-67). Ms. Heritage never told Mrs. Fox that Mr. Fox and Aimee Masten were having an affair. (C. Fox Dep. A-65).

On June 15, 2005 plaintiff complained to defendant Hugg about the statements made by Ms. Heritage to Mrs. Fox. Hugg conducted an investigation and noted that Ms. Heritage had "repeatedly commented that there was no proof of anything going on and that Mrs. Fox should talk directly to Jim about the rumor." (June 23, 2005 Memo from David S. Hugg, III to Jim Fox, Valerie Heritage and Aimee Masten, A-90). Hugg also noted that Heritage's comments about "possibly inappropriate behavior" were made "only at the prodding of Mrs. Fox." Nonetheless, Hugg concluded that Heritage had exercised poor judgment in offering

7

her feelings and comments and "should have declined to discuss
the matter with Mrs. Fox." Id. Hugg disciplined Heritage by
giving her a written reprimand. Id.

On August 3, 2005 plaintiff sent a memo to Hugg about his
increasing workload and suggested that Hugg seek approval for
filling the vacant Town Planner position. (A-91). Hugg
responded (August 19, 2005 Memo from David Hugg to Jim Fox, A-92)
by informing Fox that he appreciated his "requests and the number
of tasks you are now responsible for." Hugg indicated his belief
that Fox's section would benefit more from a Plan Reviewer or
another Code Officer instead of a Planner. Hugg also stated "for
clarification, you are not asked to be the Planning Director and
I don't know why you are updating maps (zoning?) or handling
zoning issues."

Fox replied (August 19, 2005 memo to Mr. Hugg from Jim Fox,
A-93) by agreeing that the Planner position might not be the
correct position to fill and that it would make more sense to
hire a Plan Reviewer instead. Fox offered additional suggestions
for changes in the Building & Inspections Department and made
comments regarding the performance of various employees. Fox
concluded the memo by stating "overall I think we have a good
Department and we are improving every day. I have enjoyed
working up here and I believe this Department is doing an
outstanding job for the Town." (A-96).

8

Plaintiff and defendant Heritage had a verbal dispute regarding the issuance of a building permit on November 8, 2005. Both Fox and Heritage raised their voices. (Fox Dep. A-31-33; Heritage Dep. A-72). Later that night Fox drafted a long memo (November 8, 2005 memo to David Hugg from Jim Fox, A-97) submitting his resignation as Manager of Building & Inspections and stating he was going back to his old position as Capital Projects Coordinator. Even though Fox unilaterally "resigned" from the position as Manager of Building & Inspections, he continued to perform the same duties as before. (Fox Dep. A-106-107). He moved his office downstairs but continued to be involved in the daily activities of the Building & Inspections Department. Id.

Hugg informed Fox that he did not have the authority to unilaterally resign as Manager of Building & Inspections. Fox apologized to Hugg for being so emotional. Fox also told Hugg "don't worry I will still do both jobs. " (Fox Dep. A-34-35).

Jeffrey Stover of Stover Builders, Inc. spoke with Mr. Fox on January 3, 2006 and offered him a job as a Development Coordinator with a yearly salary of $62,000.00. (Fox Dep. A-13-14, A-37-38). Fox submitted a letter of resignation the next day. (January 4, 2006 letter from Samuel J. Fox, III to David S. Hugg, A-100). The letter states: "I have spent the last five and one half years working for the Town and its citizens and I have

9

enjoyed my time here immensely."   During discovery, Fox
acknowledged that all statements made in the January 4, 2006
letter were accurate and truthful.   (Fox Dep. A-36).   Fox thanked
Hugg "for all of the help that he gave me, everything he taught
me."   (Fox Dep. A-39).

Plaintiff ran for election to the Smyrna Town Council in
April, 2006.   Several days before the election the Markow
Affidavit (A-84) appeared on an Internet blog devoted to Town
Affairs.   Postings to the blog are made anonymously.   (Markow
Dep. A-42).   The Markow affidavit was removed, also anonymously,
from the blog within 10 or 15 minutes of its appearance.   (Markow
Dep. A-43).

## ARGUMENT

I.    SUMMARY JUDGMENT STANDARD OF
      REVIEW.

A Court shall grant summary judgment if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with affidavits, if any, show there is no genuine issue
as to any material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the
moving party demonstrates an absence of material fact, the non-
moving party must come forward with specific facts showing there
is a genuine issue for trial.  Matsushita Elac. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Court views the underlying facts and reasonable
inferences therefrom in the light most favorable to the party
opposing the motion.  Pa. Coal Ass'n v. Babbitt, 63 F. 3d 231,
236 (3d Cir. 1995).  The mere existence of some evidence in
support of the non-moving party, however, will not be sufficient
for denial of a motion for summary judgment; there must be enough
evidence to enable a jury reasonably to find for the non-moving
party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249
(1986).  If the non-moving party fails to make a sufficient
showing on an essential element of its case with respect to which

11

it has the burden of proof, the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322 (1986).  The Court's role in discrimination cases is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff."  <u>Revis v. Slocomb Indus</u>. 814 F. Supp. 1209, 1215 (D. Del. 1993).

II.   PLAINTIFF'S AGE AND SEX DISCRIMINATION
      CLAIMS MUST FAIL BECAUSE HE DID NOT
      SUFFER FROM AN ADVERSE EMPLOYMENT
      DECISION.

In order to meet his initial burden of establishing a prima
facia case of age or sex discrimination, plaintiff must present
evidence that he suffered from an adverse employment decision.
Potence v. Hazelton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir.
2004); Sarullo v. United States Postal Service, 352 F.3d 789, 797
(3d Cir. 2003).  Here, the Town did not fire or demote plaintiff.
His pay was not reduced.  He was not suspended without pay.  He
did not suffer any reduction in benefits or change in employment
conditions.  See Turner v. Schering-Plow Corp., 901 F.2d 335, 342
(3d Cir. 1990); Mondzelewski v. Pathmark Stores, Inc., 162 F.3d
778, 788 (3d Cir. 1998).  Isolated negative comments are legally
insufficient to constitute an adverse employment action.
Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998); Witcher
v. Sodexho, Inc., 478 F.Supp. 2d 663, 673-674 (D.Del. 2007).
Plaintiff has no claim for employment discrimination because the
Town did not discipline him, suspend him or otherwise sanction
him in any way.

Plaintiff's Complaint may be construed to state a claim for
hostile work environment or constructive discharge.  These claims
must also be dismissed.  There is no evidence that plaintiff's
"workplace [was] permeated with discriminatory intimidation,

13

ridicule and insult that [was] sufficiently pervasive to alter the conditions of [his] employment." Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 240 (2nd Cir. 2007). Plaintiff has not shown that "the conduct complained of would have the forseable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." Gray v. York Newspapers, Inc. 957 F.2d 1070, 1079 (3d Cir. 1992).

On the contrary, plaintiff's resignation letter noted: "I have spent the last 5 and one-half years working for the Town and its citizens, and I have enjoyed my time here immensely." (emphasis added). Plaintiff has acknowledged the accuracy of this statement. After he left the Town plaintiff "thanked Mr. Hugg for all the help that he gave me, everything he taught me." Plaintiff resigned only because he obtained a higher-paying position in the private sector.

14

### III. PLAINTIFF'S CLAIMS PURSUANT TO 42 U.S.C. §2000(e) and 29 U.S.C. § 626 MUST BE DISMISSED BECAUSE THERE IS NO EVIDENCE OF DISCRIMINATION AGAINST PLAINTIFF BASED ON SEX OR AGE.

It is unlawful for an employer to discriminate against any person with respect to compensation, terms, conditions or privileges of employment on the basis of sex.  42 U.S.C. § 2000-e 2(a)(1).  It is also unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's age.  29 U.S.C. §§ 623 (a)(1); <u>Witcher v. Sodexho</u>, 478 F.Supp. 2d 663, 673 (D. Del. 2007).

Discovery has revealed no facts to support plaintiff's allegation that the Town discriminated against him on the basis of his sex or age by refusing to promote him to Assistant Town Manager.  Perhaps plaintiff could assert a colorable claim if a younger (or female) employee filled the job.  However, no one was appointed to the position.  It was vacant in 2005 and it remains unfilled.  Defendant Hugg decided not to fill the position because he believed it was unnecessary.  His decision had nothing to do with Mr. Fox's age or sex.

Similarly, there is nothing in the record which indicates defendants discriminated against plaintiff on the basis of age or sex by "refusing to respond adequately and appropriately to his

15

complaints." (Complaint A-6).  Defendant Hugg in fact responded to plaintiff's complaints.  He reprimanded defendant Heritage in writing for the comments she made to plaintiff's wife.  He addressed plaintiff's concerns about inadequate staffing in the Building & Inspections Department.  He acknowledged plaintiff's complaint regarding a remark made by Town employee Kim Cronin by directing Ms. Cronin's supervisor to advise her that such comments were inappropriate and to "record the disciplinary action in writing as part of Kim's personnel file." (A-86).  Plaintiff may have deemed such responses inadequate, but  they were not based on plaintiff's sex or age.

Plaintiff's allegation that he was treated "differently than a similarly situated employee" (Complaint, A-6)(presumably Ms. Vinc) is also unsupported by the evidence.  Mr. Fox and Ms. Vinc occupied equivalent positions in the Town's organizational structure.  Neither Mr. Fox nor Ms. Vinc were promoted to the position of Assistant Town Manager.  Plaintiff was treated more favorably than Ms. Vinc with respect to compensation.  His yearly salary was $52,000.00 while her salary was $37,500.00.

Judge Robinson's finding in Witcher applies equally here: "Other than plaintiff's conclusory statements and subjective feelings, there exits no record evidence that plaintiff's age [or sex] played a factor in the conditions of his employment.  The mere fact that plaintiff was older [or of a different sex] than

16

his co-workers does not make the actions of which plaintiff complains age-[or gender] related." <u>Witcher</u>, 478 F.Supp. 2d at 674.

IV.    DEFENDANT HERITAGE IS ENTITLED TO
       JUDGMENT AS MATTER OF LAW BECAUSE HER
       STATEMENTS REGARDING PLAINTIFF WERE NOT
       DEFAMATORY.

In determining whether or not a statement is defamatory, the Court must first determine whether the alleged statements are expressions of fact or protected expressions of opinion and then whether the challenged statements are capable of a defamatory meaning. Doe v. Cahill, 888 A.2d 451, 463 (Del. Supr. 2005). Here, in direct response in questions posed by Mrs. Fox, Ms. Heritage provided several facts regarding Mr. Fox and Ms. Masten - closed door meetings, long glances and simultaneous lunches - followed by Ms. Heritage's opinion that such actions were inappropriate or unprofessional. Ms. Heritage did not tell Mrs. Fox that Mr. Fox and Ms. Masten were having an affair and repeatedly emphasized there was no proof of anything going on. Moreover, Ms. Heritage agreed with Mrs. Fox's stated belief that her husband was not having an affair by stating "You are probably right. You can't assume anything if there isn't any evidence."

Pure expressions of opinion are protected under the First Amendment. Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974); Riley v. Moyed, 529 A.2d 248, 251 (Del. Supr. 1987). A pure opinion is one that is based on stated facts or facts that are known to the parties or assumed by them to exist. Id. Ms.

18

Heritage's characterization of Mr. Fox's actions as "inappropriate" or "unprofessional" are clearly expressions of opinion and therefore not actionable.

In order for a plaintiff to prevail on a claim that statements of fact are defamatory he must first establish their falsity. <u>Riley v. Moyed</u> at 250. Here, there is no evidence that Ms. Heritage's factual assertions are untrue. Even if the assertions were disputed by plaintiff, they are not capable of a defamatory meaning because they "do not lower him in the estimation of the community or deter third persons from associating or dealing with him." <u>Riley v. Moyed</u> at 253.

V.    PLAINTIFF'S DEFAMATION CLAIM
AGAINST DEFENDANT HERITAGE MUST BE
DISMISSED BECAUSE HE HAS NOT
ALLEGED SPECIAL DAMAGES.

Oral defamation (slander) is not actionable absent special damages. <u>Spence v. Funk</u>, 396 A.2d 967, 970 (Del. Supr. 1978). Such special damages must be pecuniary in nature. Harm to a plaintiff's "feelings" is not sufficient. Prosser, <u>Law of Torts</u> (1971) § 111 p. 739. Plaintiff's defamation claim against defendant Heritage must fail because he has not suffered any pecuniary damages as a result of her oral statements.

## VI.  DEFENDANTS HAVE NOT BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED UNDER DELAWARE LAW.

In <u>Merrill v. Crothall-American, Inc.</u>, 606 A. 2d 96 (Del. Supr. 1992) the Delaware Supreme Court held that every employment contract made in Delaware includes an implied covenant of good faith and fair dealing.  In order to show a breach of this implied covenant, plaintiff must show the conduct of the employer constituted "an aspect of fraud, deceit or misrepresentation." <u>Id</u>. at 101.  The record here contains no evidence of any fraud, deceit or misrepresentation.  Defendants are therefore entitled to judgment as a matter of law as to plaintiff's state law claim.

21

<u>CONCLUSION</u>

For the foregoing reasons, defendants Town of Smyrna, David S. Hugg, III and Valerie Heritage respectfully request that judgment be entered on their behalf.

**AKIN & HERRON, P.A.**

/s/ Bruce C. Herron
Bruce C. Herron
Attorney I.D. No.: 2315
1500 Shallcross Avenue
Suite 1-A
Wilmington, Delaware  19806
(302) 427-6987
Attorney for Defendants

Dated: May 30, 2008

H:\tmw5\data\files\Docs\3651.056\BRIE\11275.WPD

22